**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald K. SHEPHARD, Defendant–
Appellant.**

**No. 92–3639.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1993.

Decided Sept. 10, 1993.

Rehearing Denied Nov. 4, 1993.

Melissa F. Sebree, Kansas City, MO, argued, for defendant-appellant.

E. Eugene Harrison, Asst. U.S. Atty., Kansas City, MO, argued, for plaintiff-appellee.

Before JOHN R. GIBSON, LOKEN, and HANSEN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Donald K. Shephard, having been convicted on twenty counts of charges related to dealing cocaine and crack and sentenced to life imprisonment, complains that he is a victim of sentencing entrapment. He also argues that the indictment was multiplicitous because it charged him in twenty counts for similar behavior. We affirm the convictions and sentence of the district court.[1]

Because the indictment covers acts taking place over eight months, the facts of the case are many and repetitious, and we only summarize them. Shephard's trouble began in April 1988, when a Kansas City, Missouri police detective, Mary Brown, investigated a citizen complaint about suspected narcotics trafficking. Brown saw Shephard's car pull up to 2325 Cypress and she walked up to the house and asked a little boy in the yard if there were any "happenings" (i.e., drug sales) at the house. The boy shook his head "no". Brown headed back to her car, but Shephard appeared at the door, gave Brown an address, 3227 Spruce, and told her, "[G]o there and they'll take care of you." She followed his directions and was admitted to a house where she bought twenty five dollars worth of crack.[2]

Brown continued to work this connection with Shephard through November 1988. She worked her way from the initial twenty-five dollar purchase of one-fifth gram of crack through several purchases of ounce and two-ounce quantities of powdered cocaine and crack, up to the final deal involving 218.6 grams of cocaine. In all, she made twelve drug purchases. She dealt directly with Shephard and also with others whom Shephard sent to do his business. Along the way, Brown changed from paying cash for the drugs to paying with food stamps for several purchases, delivering $40,000 in food stamps for the final transaction.

Shephard was indicted on twenty counts, the first count being conspiracy to distribute crack and cocaine from April 1 to November 7, 1988; the second through twentieth counts being twelve counts for sales of crack and cocaine, and seven counts for accepting food stamps in payment for drugs on different

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

2. Cocaine hydrochloride is powdered cocaine. Cocaine base, known as crack, is a clay-like substance which is easier to ingest by smoking than powdered cocaine. The penalty for possession of a given amount crack is the same as that for one-hundred times that amount of powdered cocaine. See 21 U.S.C. § 841(b)(1) (Supp. III 1991).

dates. The jury convicted on all counts. The court sentenced Shephard to life imprisonment without parole on Count VI, and gave various sentences on the other counts to run concurrently with the life sentence.

On appeal, Shephard argues that he was the victim of sentencing entrapment in three respects: (1) that "A Nine Month Investigation with Repeated Solicitations was Unwarranted"; (2) that Mary Brown's request that Shephard "rock" (i.e., make into crack) the cocaine she was buying constituted entrapment; and (3) that Mary Brown "Lured [Shephard] into the Food Stamp Trade Business in Order to Increase [his] Punishment Under the Sentencing Guidelines."

The procedural setting of Shephard's argument is a claim that the district court should have departed downward because of the entrapment. This is not the usual case in which a defendant asks us to review an unreviewable failure to depart. Rather, Shephard argues that the entrapment made his sentencing an unconstitutional deprivation of due process. *See United States v. Calva*, 979 F.2d 119, 122–23 (8th Cir.1992) (rejecting same argument for lack of evidence); *see generally United States v. Panitz*, 907 F.2d 1267, 1272–73 (1st Cir.1990). Shephard uses the term "sentencing entrapment" to denote two distinct theories.

■ Shephard's first point, that the government's investigation was too long and involved too many buys, is not properly an entrapment argument, for it focuses not on whether Shephard was predisposed to commit the crime, but on whether the government stretched out the investigation merely to increase the sentence Shephard would receive. *See generally United States v. Barth*, 990 F.2d 422, 425 (8th Cir.1993); *United States v. Stuart*, 923 F.2d 607, 613–14 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991). This argument is more aptly referred to as sentence "manipulation" than sentence "entrapment." *See United States v. Connell*, 960 F.2d 191, 194 (1st Cir.1992). Shephard essentially

asks the judiciary to fashion a code of conduct for sting operations, deciding at what point leading on even a willing criminal becomes unfair to the point of being unconstitutional. Obviously, any transaction in a sting after the first violation of law, however minor, will be subject to such attacks. Yet, we have established that it is legitimate for police to continue to deal with someone with whom they have already engaged in illicit transactions in order to establish that person's guilt beyond a reasonable doubt or to "probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy." *Calva*, 979 F.2d at 123; *see Barth*, 990 F.2d at 425. The course of the transactions in this case shows a legitimate pattern of increasing amounts of drugs culminating with the final 218 grams sale, which indicates that police did no more than persist in ascertaining what quantity Shephard was willing and able to deal.

The lengthy series of transactions with the undercover agent was raised at sentencing and the government argued that the continuing transactions were material not only to Shephard's own conviction but to breaking another substantial cocaine ring in the city. The government further argued that there was substantial evidence of other drug dealings by Shephard and that he possessed large amounts of cash far exceeding the $6,000 cash the government gave him in the course of the controlled buys. The district court did not rule or comment on this statement, in part because of Shephard's disruptive behavior at sentencing.

We have approved today, as on other occasions, a chain of transactions between an undercover agent and a drug dealer. We recognize that there could be situations in which the government engages in continuing undercover or sting transactions for the sole purpose of ratcheting up a sentence under the guidelines. We are aware that a potential for abuse exists, but abuse is not present on the record before us.[3]

---

3. The computation of the sentence demonstrates that on the quantity of drugs alone, Shephard would have been subject to a sentence of 121 to 151 months. He was, however, assessed four

additional levels as a leader or organizer, and four levels for obstruction of justice. This, with a criminal history of five, resulted in the range of 360 months to life. Thus, factors other than

Shephard's arguments that he was entrapped into selling crack rather than cocaine hydrochloride and into accepting food stamps are not properly *sentencing* entrapment arguments, but rather theories of entrapment on the elements of his crimes. These theories were for the jury to resolve in deciding guilt or innocence, and in fact, Shephard requested and received an entrapment instruction on the food stamp issue. The jury rejected his defense. The district court did not err in refusing to take these theories into account again at sentencing. *See United States v. Riles,* 928 F.2d 339, 342 (10th Cir. 1991).

Shephard makes an Eighth Amendment argument that his sentence is cruel and unusual in light of "the proactive role of the government in soliciting the Defendant to turn what cocaine he had into crack." We have already rejected his entrapment argument once, and so summarily reject it dressed in this new guise.

Shephard argues that the sentencing guidelines as applied to him violate his due process rights because they vest too little discretion in the district court. We have already rejected this argument. *United States v. Nimrod,* 940 F.2d 1186, 1189 (8th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992).

■ Finally, Shephard argues that the counts in the indictment were multiplicitous and thus violated the Double Jeopardy Clause. Federal Rule of Criminal Procedure 12(b)(2) requires that a complaint about the multiplicity of an indictment and its inherent double-jeopardy problems be raised before trial. *United States v. Garrett,* 961 F.2d 743, 748 n. 7 (8th Cir.1992). The record does not reflect, nor does Shephard claim, that he did this. Therefore, we deny this point.

We affirm the convictions and sentence of the district court.

quantity of drugs contributed substantially to the