**UNITED STATES of America, Plaintiff,**

**v.**

**Keith Anthony CANNON, and Stephanie Cannon, a/k/a Stephanie Lynch, Defendants.**

Crim. No. C3–94–96.

United States District Court,
D. North Dakota,
Southeastern Division.

April 4, 1995.

Keith Reisenauer, Asst. U.S. Atty., Fargo, ND, for plaintiff.

Richard Henderson, Fargo, ND, for Keith Cannon.

Michael C. O'Neel, Fargo, ND, for Stephanie Cannon.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

A confidential informant introduced the defendants to a Deputy Sheriff ("the officer") in Alexandria, Minnesota, who was operating undercover posing as a purchaser of illegal drugs. The officer conducted a sting operation, in which he purchased crack cocaine from the defendants on three occasions in Alexandria. The first transaction was audiotaped, and the next two were videotaped.

During the first meeting, the defendants asked the officer if he could help them purchase some .38 caliber derringers or .357 magnum pistols. During the second meeting, the defendants asked to purchase five handguns: two .38 caliber snub nose revolvers, two derringers, and one .25 caliber semiautomatic handgun. During the third meeting, the defendants again stated they wished to purchase five handguns. The officer had arranged to conduct a reverse sting on the gun sale, with an agent of the Bureau of Alcohol, Tobacco, and Firearms ("the agent") posing as an illegal gun seller. The defendants agreed to travel to Fargo, North Dakota to sell additional crack to the officer and to purchase handguns from the agent.

The agent brought to the Fargo meeting an assortment of eight handguns, and also two small Mac type machineguns. At a pretrial hearing he explained his decision to bring the machine guns:

Q: Did [the officer] ask you to provide any automatic or semi-automatic weapons?

A: Yes, sir.

Q: What did he ask you to provide?

A: He asked [for] the 9 millimeter and the .25 automatic—excuse me, no, he didn't ask for the 9 millimeter. He asked for the .25 automatic.

Q: What [you had] referred to as the two Ravens[,] small semi-automatic pistols?

A: Yes, sir.

Q: He didn't ask you to provide any machine gun?

A: No, sir.

Q: That was on your own initiative?

A: Through my experience, I know that drug dealers use machine guns, so I provided them.

Q: That was on your own initiative then?

A: Yes, sir.

Transcript, September 30, 1994, pp. 48–49.

At the meeting in Fargo, the defendants initially purchased only three handguns. After additional conversation, and some salesmanship by the officer and agent, the defendants also purchased one of the machine-

guns.[1] The guns were not loaded, and no ammunition was included in the sale. The defendants left the meeting with the guns in their possession, accompanied by the officer, and were promptly placed under arrest by a large team of law enforcement agents.

The case went to trial and the jury found the defendants guilty on drug and gun charges. The defendants were individually convicted under Count Six of using and carrying firearms during and in relation to a drug trafficking crime.[2] In response to special interrogatories the jury specifically found that this offense included the machinegun, as well as each of the three handguns.

The convictions on this count are based on 18 U.S.C. § 924(c)(1), which makes it is illegal to use any firearm during and in relation to a drug trafficking crime. A defendant is equally guilty of an offense under this statute regardless of the type of firearm used, but the penalty imposed by the statute varies. The statute imposes a mandatory five year sentence for the use of a firearm generally, but increases the mandatory term to thirty years if the firearm is a machinegun. The statute also provides that these sentences must be consecutive to any other term of imprisonment.

The defendants argue that the five year mandatory sentence should be applied, rather than the thirty year, because the offense conduct involving the machinegun was the result of actions by the government constituting sentencing entrapment or sentencing manipulation, and should therefore be disregarded in sentencing. (Docket Nos. 93 and 95). The United States argues the contrary. (Docket No. 94).

Sentencing entrapment is a relatively new theory, first discussed in this circuit in 1991. *See United States v. Lenfesty,* 923 F.2d 1293, 1300 (8th Cir.1991). Sentencing entrapment is analogous to the defense of entrapment, and considers whether a defendant, who was admittedly predisposed to commit a crime, was induced to commit additional offense conduct that he was not predisposed to commit, and which results in inflating the penalty imposed. The Eighth Circuit Court of Appeals adopted this theory in *United States v. Barth,* 990 F.2d 422, 424–25 (8th Cir.1993).

Sentencing manipulation is an even newer theory, first distinguished from sentencing entrapment in this circuit in 1993. *See United States v. Shephard,* 4 F.3d 647, 649 (8th Cir.1993). Sentencing manipulation is analogous to the defense of outrageous misconduct, and focuses on the conduct and motives of the government rather than on the predisposition of the defendant.[3] *Id.* "When an accusation of sentencing factor manipulation surfaces, the judicial gaze should, in the usual case, focus primarily— though not exclusively—on the government's conduct and motives." *United States v. Gibbens,* 25 F.3d 28, 31 (1st Cir.1994). In effect, it is a theory under which the judiciary can fashion a code of conduct for reverse sting operations, to guard against government misconduct aimed solely at "ratcheting up" a defendant's sentence. *Id.*

1. The events of this meeting are set out in detail in this court's Memorandum and Order dated March 3, 1995, (Docket No. 85) denying the defendants' motion for a new trial on the basis of entrapment.

2. The defendants were also individually convicted under Count Seven of unlawfully possessing a machinegun, in violation of 18 U.S.C. § 922(o). There is no mandatory term of imprisonment for this offense. The focus of this order is on whether the presence of the machinegun should trigger application of the mandatory thirty year penalty under Count Six. The question of whether the resolution of this issue also affects the Sentencing Guidelines calculation in this case via Count Seven will be considered separately.

3. The court stated in dicta in *Lenfesty* that "[w]here outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities, this contention might bear fruit." *Lenfesty,* 923 F.2d at 1300. This early formulation has been quoted as stating the elements of sentencing entrapment, but it was drafted prior to the time that sentencing manipulation was distinguished as a separate theory, and appears to blend elements of both theories together. The concept of outrageous misconduct would appear to be relevant to the theory of manipulation rather than to the theory of entrapment. *See United States v. Okey,* 47 F.3d 238 (7th Cir.1995).

■ These arguments can be raised in mitigation at the time of sentencing even when the defenses of entrapment or outrageous misconduct have failed in the determination of guilt at trial. *See United States v. Hulett,* 22 F.3d 779 (8th Cir.1994). Although these arguments are typically raised in cases involving reverse sting drug sales, they can be applied to non-drug cases as well. *See United States v. Nelson,* 988 F.2d 798 (8th Cir.1993) (fraud); *United States v. Stein,* 973 F.2d 600 (8th Cir.1992) (bribery). If entrapment or manipulation is found, the sentencing court can depart under the Guidelines or can simply "exclude the tainted transaction" from consideration in sentencing. *Barth,* 990 F.2d at 425. Entrapment can result in a downward departure in Guideline calculations, *United States v. Staufer,* 38 F.3d 1103 (9th Cir.1994), or in avoiding the imposition of a mandatory sentence that would otherwise be triggered by the additional offense conduct. *Barth,* 990 F.2d at 425.

■ The test of sentencing manipulation is whether the government conduct was outrageous and aimed only at increasing the sentence, or whether it served some legitimate law enforcement objective. *United States v. Calva,* 979 F.2d 119, 122–23 (8th Cir.1992). In conducting a reverse sting operation, the government is entitled to elicit additional offense conduct for purposes such as establishing guilt beyond a reasonable doubt, probing the depth and extent of a criminal enterprise, determining whether co-conspirators exist, and tracing the chain of a criminal hierarchy. *Id.*

■ The court is well familiar with the facts of this case. The court presided at a lengthy pretrial hearing and throughout the trial. The court closely observed the demeanor of the witnesses. The court has viewed the audio and videotapes, and the documents in evidence. The evidence discloses that two agents were in the room with the defendants and the guns throughout the sale, and that a large number of law enforcement agents were waiting outside to make the arrest. The decision had previously been made to arrest the defendants at the conclusion of the meeting, and the government was in complete control of the situation at all times.

The defendants in this case were willing sellers of crack cocaine and willing buyers of handguns. There is no suggestion of sentencing entrapment or manipulation on those charges. However, they specifically asked only to view and purchase handguns. The government conduct at issue here is the decision by the agent to nevertheless bring two machineguns to the reverse sting meeting along with handguns of the type that had been requested.

There was no legitimate law enforcement purpose served by this action. Bringing the machineguns did not further the goals of establishing guilt beyond a reasonable doubt, probing the depth and extent of a criminal enterprise, determining whether co-conspirators existed, or tracing the chain of a criminal hierarchy. The decision to arrest had been made prior to the meeting, and the presence of the machineguns could not make the defendants any more guilty of the offense than they would have been if only handguns had been displayed and purchased. The only effect of, and the only possible motive for, this action was to increase the defendants' sentences from five years to thirty years.

This court is outraged and shocked by the law enforcement conduct in this case. Here law enforcement agents provided a machinegun to the defendants for the sole purpose of enhancing their sentences by 25 years. This is a reverse sting operation in which the agents were pro-actively providing the guns to the defendants. It is simply wrong and a violation of any concept of fair play that the machine gun was voluntarily injected for the sole purpose of sentence enhancement. Just as we, in the United States, were similarly outraged when our government used guns as a medium of exchange in the Iranian hostage situation, we can be properly outraged at our government conduct here in gratuitously supplying a machine gun to criminals.

The defendants had an unloaded machinegun in their possession, under the complete control of law enforcement officers, for a matter of moments, and face having their sentences inflated by twenty-five years as a result. This is an example of the mistaken

"one size fits all" approach of mandatory sentences. One size does not fit all. A thirty year sentence cannot be justified in this case, in light of the government's conduct in procuring the machinegun offense.

The government argues that this was a legitimate law enforcement practice, drawing an analogy to the situation of an undercover officers making several drug purchases from an illegal dealer in increasing amounts. This practice is approved. *Shephard,* 4 F.3d at 649. However, the practice of overcoming the suspicions of drug dealer by engaging in a series of drug buys in a straight sting operation is not analogous to this case. In this case it was the government offering the illegal sale in a reverse sting, there was a single transaction, and there were no suspicions on the part of the defendants to be overcome. Whatever legitimate law enforcement purposes may be served by incremental buys in drug stings are not present here. The government had this case sewn up, and the machineguns were nothing more than a gratuitous experiment, to see if the defendants would engage in additional offense conduct that would increase their minimum sentences on the gun count by sixfold. Reverse stings present an inherent risk of abuse, and the courts must ensure that the government uses this powerful tool only to detect crime, not to create it.

The government's conduct of bringing the machineguns to the meeting was not outrageous misconduct for the purpose of the guilt phase, because it did not significantly alter the defendants' likelihood of committing the offense charged in Count Six. It is, however, outrageous misconduct in violation of the Fifth and Eighth Amendments at the sentencing phase, because it improperly and dramatically manipulated the sentences to which the defendants are subject. The court holds that this conduct constitutes sentencing manipulation, and in light of this violation of the defendants' constitutional rights the additional offense conduct and the statutory mandatory sentence must be excluded by the court.

This court has previously ruled that it was within the broad discretion of the jury to find, based on the evidence presented at trial, that the government had met its burden of proving that the defendants were predisposed to purchase the machinegun. However, the court now makes its own determination, based on all the evidence cognizable in imposing sentence, that in the context of a sentencing entrapment analysis, the defendants have met their burden of proving by a preponderance of the evidence that the defendants were not predisposed to purchase a machine gun and that they were induced to do so by the government. Therefore, in addition to and in the alternative to the finding of sentencing manipulation, the court also holds that the government conduct in this case constitutes sentencing entrapment, and excludes the tainted conduct and the statutory mandatory sentence from consideration in sentencing.

**It Is Ordered** that the defendants be sentenced under Count Six as though the offense conduct had involved "firearms" only, and as though no machinegun had been present.