# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2703

_____

| | |
|---|---|
| United States of America, | * |
| | * |
|       Plaintiff - Appellee, | * |
| | *  Appeal from the United States |
|    v. | *  District Court for the |
| | *  District of Minnesota. |
| Javier Garcia Torres, | * |
| | * |
|       Defendant - Appellant. | * |

_____

Submitted: February 10, 2009
Filed:  April 27, 2009 **(Corrected 5/7/09)**

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Javier Garcia Torres pleaded guilty to one count of distribution of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and was sentenced to 121 months' imprisonment and four years' supervised release.  Torres appeals only his sentence, contending that the district court[1] abused its discretion when it failed to depart downward based on his claim of sentencing manipulation.  We affirm.

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

I.

On August 21, 2007, a confidential informant (hereinafter the Informant) contacted the Stearns County, Minnesota, Sheriff's Office to report that he had been in contact with an individual, later identified as Torres, regarding the purchase of methamphetamine. On the same day, in response to this tip, the Informant purchased 26.4 grams of a mixture or substance of methamphetamine (8.71 grams actual methamphetamine) from Torres at Torres's residence.[2]

Torres lived in a trailer park that had only one entrance. Police indicated that they were afraid that they would be detected if they tried to monitor the controlled sales directly. Thus police employed the Informant, fitted with a recording device, and they monitored the transaction from another location. Before the purchase, police gave the Informant prerecorded buy money to use in the transaction. Police met the Informant approximately one hour after the meeting to collect the methamphetamine.

Police did not arrest Torres after the August 21 transaction. Rather, they engaged in a series of five additional controlled buys during the next six weeks. The controlled buys resulted in the following drug quantities:

- Aug. 29, 11 grams methamphetamine (3.63 grams actual);
- Sept. 4, 29.4 grams methamphetamine (5.59 grams actual);
- Sept. 20, 27.8 grams methamphetamine (8.06 grams actual);

---

[2]The parties' briefs, the plea agreement and the presentence report (PSR) each contain slightly different drug quantities (both total weight and actual methamphetamine). Here, we use the amounts listed in the PSR and adopted by the district court. Torres had only one objection to the PSR, that there was a mathematical error in calculating the total amount of methamphetamine (actual). All agree that any error in this calculation has no impact on Torres's sentence, *infra*.

- Sept. 27, 54.9 grams methamphetamine (18.67 grams actual);
- Oct. 2, 110 grams methamphetamine (29.7 grams actual).

Torres was arrested on October 2, 2007, after the last controlled buy was completed.

Torres was charged with four counts of distribution of methamphetamine. Counts I and II alleged violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Counts III and IV alleged violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Pursuant to a plea agreement, Torres pleaded guilty to Count IV; Counts I, II, and III and a forfeiture count were dismissed. Torres waived his right to appeal his conviction, but preserved his right to move for a departure or variance based on sentencing entrapment, which the parties and the district court agree is more accurately described as an argument based on sentencing manipulation.

Based on the total drug quantity from the six controlled buys, the court accepted the PSR's determination that Torres was responsible for at least 50 but less than 150 grams of actual methamphetamine, which set his base offense level at 32.[3] USSG § 2D1.1(c)(4). He received a three-level reduction for acceptance of responsibility. USSG § 3E1.1. Torres's total offense level of 29 and criminal history category of IV produced a U.S. Sentencing Guidelines ("Guidelines") advisory sentencing range of 121-151 months' imprisonment and supervised release range of 4-5 years. Torres moved for a downward departure based on sentencing entrapment, which he later clarified to be an argument about sentencing manipulation. The district court rejected Torres's claim of sentencing manipulation and sentenced him to 121 months' imprisonment and four years' supervised release.

---

[3]The PSR initially indicated that Torres was responsible for 74.36 grams of actual methamphetamine. On Torres's objection, the district court accepted the finding that Torres was responsible for 65.32 grams of actual methamphetamine. This discrepancy does not affect Torres's sentence, since both fall in the same range on the Drug Quantity Table, at least 50 grams but less than 150 grams of actual methamphetamine. USSG § 2D1.1(c)(4).

## II.

On appeal, Torres argues that the district court abused its discretion by failing to grant a downward departure or variance based on alleged sentencing manipulation. Torres claims that officers did not need to engage in all six transactions before arresting him, and that they conducted the subsequent controlled buys solely for the purpose of increasing his sentence. He notes that if he had been arrested after any of the first three transactions, his Guidelines range would have been 70-87 months, and, after the fourth transaction, 84-105 months. See USSG § 2D1(c)(6), (7).

## A.

We first examine Torres's claim that the district court abused its discretion when it failed to depart downward on the basis of sentencing manipulation. "[T]he denial of a downward departure is unreviewable unless the district court had an unconstitutional motive or an erroneous belief that it was without the authority to grant the departure." United States v. Saddler, 538 F.3d 879, 889 (8th Cir. 2008) (citation omitted). We may review this claim because sentencing manipulation, if present, is a violation of the Due Process Clause. See United States v. Baber, 161 F.3d 531, 532 (8th Cir. 1998). Torres contends that the district court applied an erroneous test to his request for a downward departure because the district court indicated that it was uncertain whether the test for sentencing manipulation was objective or subjective and relied on an improper factor (delay in investigation) in coming to its conclusion. We review the district court's factual findings for clear error and its legal conclusions de novo. See United States v. Fields, 512 F.3d 1009, 1011 (8th Cir. 2008).

Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible. See United States v. Shephard, 4 F.3d 647, 649 (8th Cir. 1993). In order for sentencing

-4-

manipulation to form the basis for a departure, the defendant bears the burden to prove by a preponderance of the evidence "that the officers engaged in the later drug transactions solely to enhance his potential sentence." Baber, 161 F.3d at 532. "[I]t is legitimate for police to continue to deal with someone with whom they have already engaged in illicit transactions in order to establish that person's guilt beyond a reasonable doubt or to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy." Shephard, 4 F.3d at 649 (internal citation and quotation marks omitted). Police may also engage in "a legitimate pattern of increasing amounts of drugs" in order to determine what quantity of drugs a defendant will deal. Id. If the court finds sentencing manipulation, it should grant a downward departure to the Guidelines range it believes would apply absent the manipulation, since such manipulation artificially inflates the offense level by increasing the quantity of drugs included in the relevant conduct. See id.

At a December 17, 2007 motion hearing, Officer Jason Okerstrom, the lead police investigator on Torres's case, testified about the investigation. When asked why Torres was not arrested after the first two controlled buys, he replied that the police were "[t]rying to build a bigger case, a stronger federal case." He also indicated that the investigation was not complete after the first several controlled buys, and that some of the goals of the investigation were to identify Torres's associates and source of supply for methamphetamine. Officer Okerstrom also testified that surveillance of the trailer park was difficult, and that the conditions hindered visual and video surveillance. He stated that during the course of the investigation, officers conducted no video surveillance and arrested no accomplices.

Officer Okerstrom was also called as a witness at the July 22, 2008 sentencing hearing and testified again about the Torres investigation. He stated that the primary goal of the investigation was to investigate Torres's narcotics sales, including "his ability to sell larger amounts of methamphetamine." He indicated that police had formed the opinion that Torres could sell large amounts of methamphetamine based

on their investigation in a previous case that Torres was involved in. Officer Okerstrom indicated that repeat buys were necessary to build Torres's trust before a large transaction would be completed. He testified that additional investigative goals were to identify coconspirators and the source of Torres's supply.

Rejecting Torres's argument, the district court found that police had legitimate law enforcement reasons for engaging in a series of controlled buys with Torres. Specifically, the district court found that the police needed a series of transactions "to start low, to build up the trust of the seller and to see how much drugs the seller is capable of selling." The district court also credited Officer Okerstrom's testimony that the police were attempting to locate accomplices and the source of the drugs, learn the structure of the criminal enterprise, and build a strong case against Torres.

Torres argues that the fact that police did not succeed in locating any coconspirators or a source of supply proves that there was no legitimate purpose for the additional drug transactions. The district court considered this argument and rejected it, stating:

> The fact that the officers ultimately succeeded in some of their goals, such as ascertaining the quantity of meth that Mr. Torres was willing and able to deal, but did not succeed in others, such as identifying Mr. Torres's source of supply, does not mean that the government engaged in sentencing manipulation.

Torres further argues that Officer Okerstrom's testimony changed over time and should be rejected in the absence of independent evidence, and that there is no evidence in the written police reports of attempts to locate coconspirators or the source of methamphetamine. Contrary to Torres's contention, Officer Okerstrom testified consistently from one hearing to the next, and the various investigative goals were not mutually exclusive. Torres's argument essentially challenges the district court's fact determinations, which we conclude were not clearly erroneous. See Fields, 512 F.3d at 1011 (district court's fact determinations reviewed for clear error).

The investigative purposes identified by the district court are sufficient to support the conclusion that there was no sentencing manipulation. See Baber, 161 F.3d at 532 (district court did not err in refusing to grant downward departure where investigation was shaped by legitimate law enforcement goals). Here, six controlled buys spread over a period of six weeks is well within the range of investigatory choices we have previously affirmed. Cf. Shephard, 4 F.3d at 648-49 (twelve drug purchases over eight months); United States v. Mai Vo, 425 F.3d 511, 512 (eight purchases over eight months).

B.

Torres also claims that the district court abused its discretion when it did not grant a downward variance from the Guidelines range based on the same factual allegations underlying his sentencing manipulation claim.[4] "A variance must be based on the factors in 18 U.S.C. § 3553(a)." United States v. Myers, 503 F.3d 676, 684 (8th Cir. 2007). Torres's claim can be best construed as an argument that the district court failed to consider the manner of the government's investigation, which is relevant to the "nature and circumstances of the offense" 18 U.S.C. § 3553(a)(1). We review the sentence imposed by the district court for reasonableness, a standard "akin to traditional abuse of discretion review." Myers, 503 F.3d at 684. The sentence imposed by the district court "may be unreasonable if a sentencing court fails to consider a relevant factor that should have received significant weight . . ." United States v. Blackford, 469 F.3d 1218 (8th Cir. 2006) (quoting United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005)).

---

[4]Our discussion of sentencing manipulation above does not constrain the discretion of the district court to consider defendant's factual contentions under the rubric of 18 U.S.C. § 3553(a) in shaping an appropriate sentence. The district court may find that a downward variance is proper even if the defendant cannot carry his burden of proof that the investigation was conducted "solely to" enhance his sentence.

The district court did not abuse its discretion in sentencing Torres to 121 months' imprisonment. The district court gave a full hearing to Torres's arguments and explicitly stated that it had considered the § 3553(a) factors, "including the nature and circumstances of the offense and the history and characteristics of the defendant," in arriving at its decision. Relevant to Torres's argument on appeal, the court found that he "was not merely someone who sold drugs on occasion," and in its discussion of sentencing manipulation, the district court also found that the police investigation was no longer than necessary and successfully determined the amount of drugs that Torres was willing to sell. While we would prefer to see the district court more clearly distinguish its reasons for denying a departure from its reasons for denying a variance, we are satisfied that the district court did not err. Its decision to deny Torres a variance and sentence him at the bottom of his Guidelines range was reasonable.

III.

For the foregoing reasons, we affirm the sentence imposed by the district court.

_____