NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0496n.06

No. 24-3990

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 23, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

　　　Plaintiff-Appellee,

　　　v.

DARVELL JACKSON,

　　　Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHEN DISTRICT OF OHIO

OPINION

Before: MOORE, CLAY, and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Defendant-Appellant Darvell Jackson appeals his 168-month sentence imposed after he pleaded guilty to charges relating to his unlawful possession and sale of firearms. Jackson challenges the application of a sentencing enhancement for firearms that a defendant has reason to believe will be transported out of the United States; the failure to grant an offense-level reduction for acceptance of responsibility; and the substantive reasonableness of his sentence. We **AFFIRM**.

**I.**

A grand jury returned an indictment charging Jackson and six others with fourteen firearms possession and trafficking offenses. Six counts pertained to Jackson: conspiracy to possess a machinegun, 18 U.S.C. §§ 371, 922(o), 924(a)(2); conspiracy to deal in firearms without a license, *id.* §§ 371, 922(a)(1)(A), 924(a)(1)(D); three counts of unlawful possession of a machinegun, *id.* § 922(o), 924(a)(2); and unlawful possession of a firearm with an obliterated serial number, *id.* § 922(k). Jackson pleaded guilty to these charges without a plea agreement.

At the change-of-plea hearing, the government asserted that, had there been a trial, it would have proved the following: Jackson and his co-conspirators bought, sold, and brokered deals for numerous firearms, including several that qualified as "machineguns" because of their modification through a machinegun-conversion device ("MCD"), *see* 18 U.S.C. § 921(a)(24); Jackson, in particular, sold two pistols—one of which had an MCD—to an undercover agent on June 12, 2023; the next day, on June 13, Jackson again sold two pistols (one modified with another MCD) to an undercover agent; on June 22, 2023, he yet again sold two pistols, one of which had an obliterated serial number; and two days later, he sold a rifle and two MCDs (not affixed to any weapon). Jackson and his co-defendants were not licensed to sell firearms during any of these transactions. Jackson agreed with the government's recitation of these facts.

At the sentencing hearing, the district court confirmed that Jackson's "only objection to the presentence report" was its application of a four-level enhancement pursuant to section 2K2.1(b)(6)(A) of the U.S. Sentencing Guidelines. R. 197, PageID 1397. That section applies where, as relevant here, a defendant "possessed or transferred any firearm . . . with . . . reason to believe that it would be transported out of the United States." U.S.S.G. § 2K2.1(b)(6)(A). Jackson's counsel stated that the parties did not "have any disagreement about the underlying facts"—a codefendant arranged the sale; Jackson attended the sale; and "an undercover agent stated that they sold the firearms into Canada." R. 197, PageID 1421. Jackson's counsel argued that this statement, without "additional indicia" of international transport, was insufficient to establish that Jackson had "reason to believe that that was actually happening." *Id.* at 1422.

The district court overruled this objection because "[t]he fact of the matter is, you were told, 'These weapons are going to Canada,' and you sold them anyway." *Id.* at 1424. The court also reasoned that because Jackson's only question for the undercover agent was whether he was

a police officer, "[o]nce you understood you were not selling to the police, you really didn't care . . . whether you were selling weapons that would stay in the United States." *Id.* at 1425. The district court additionally noted that Jackson "saw [a] private compartment" in the undercover agent's vehicle "being used, which I think a reasonable person could have used to believe [the undercover agent] really is taking this into Canada, because not even Customs will find it there." *Id.*

As noted, this was the only objection Jackson raised at the sentencing hearing. Of particular relevance here, Jackson's counsel agreed with the district court's statement that "there is no objection to there not being a three-level or even two-level downwards for acceptance of responsibility." *Id.* at 1398. The court then reviewed the 18 U.S.C. § 3553(a) sentencing factors.

The district court determined that the Sentencing Guidelines recommended a range of 168 to 210 months' incarceration. The longest statutory maximum, however, was 120 months. Because the district court found, applying the § 3553(a) factors, that a sentence of 120 months was insufficient, it sentenced Jackson to 120-month concurrent terms on four counts and 48 months on two counts, to run concurrently with each other but consecutively to the preceding counts, for a total of 168 months—the bottom of the Guidelines' recommendation. The district court also ordered that twelve months of this 168-month sentence would run partially consecutively to whatever sentence Jackson might receive in the state criminal proceedings initiated while Jackson was on pretrial release for this case.

Jackson timely appealed, asserting that (1) the government failed to satisfy its burden to prove that he had reason to believe that the firearms he sold to the undercover agent would be transported out of the United States; (2) notwithstanding his sentencing counsel's concession of the acceptance-of-responsibility-reduction issue and the state charge he accrued while on pretrial

release, the district court should have awarded him a two-level reduction for acceptance of responsibility; and (3) his sentence is substantively unreasonable because the district court overemphasized his state-court charge and undervalued his youth and difficult childhood.

## II.

### A.

We begin with the application of section 2K2.1(b)(6)(A) based on, *inter alia*, the undercover agent's comment that he trafficked firearms to Canada. "The government must establish by a preponderance of the evidence that a sentencing enhancement applies." *United States v. Parkey*, 142 F.4th 866, 869 (6th Cir. 2025) (citing *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012)). The parties agree that we review the district court's factual findings for clear error and its interpretation of the Guidelines de novo. *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023).

At sentencing, Jackson's counsel argued that an undercover agent's reference to Canada during a transaction on June 12, 2023 did not establish that Jackson had reason to believe that the firearms would be transported out of the United States. *See* U.S.S.G. § 2K2.1(b)(6)(A). The district court disagreed, relying on that reference to Canada and Jackson's observation of a hidden compartment in the undercover agent's vehicle following his sale of two firearms to the undercover agent on June 13, 2023.

On appeal, Jackson emphasizes the record's limited reference to Canada. First, at the plea hearing, the district court asked the government to recount the facts it would prove at trial, and the court occasionally interjected to ensure that Jackson agreed with the government's assertions. After the government described the alleged conspiracy in general terms—without referencing

Canada—Jackson stated, "I heard [government counsel] say like the Canada part, but like after that, I didn't hear what he said." R. 99, PageID 425.

Second, the government's sentencing memorandum cites the presentence investigation report ("PSIR") for its assertion that during the transaction on June 12, 2023, an undercover agent told Jackson that the agent trafficked guns to Canada. R. 176, PageID 1305. The PSIR, in turn, asserts that "Jackson asked a[n undercover agent] if they were a police officer. The [agent] told Jackson and Berry that they were not, and that they trafficked firearms into Canada." R. 170 at 5–6. The PSIR is also the source for the claim that during the transaction on June 13, 2023, "Jackson observed a[n] [undercover agent] place the firearms into a hidden compartment inside the [agent]'s vehicle." *Id.* at 6.

Although we have not previously interpreted section 2K2.1(b)(6)(A) in similar circumstances, persuasive authority does not support Jackson's position that the government failed to meet its burden. In *United States v. Mendoza*, the Fifth Circuit gave short shrift to a similar argument and held that "the [undercover agent]'s statement that he told [the defendant] the firearms were going to Mexico provided sufficient support for the enhancement." 556 F. App'x 326, 327 (5th Cir. 2014). And in *United States v. Pratts*, the Eleventh Circuit upheld the application of this enhancement where a confidential informant "twice stated that he purchased firearms to 'send them to Mexico,' and . . . [the defendant] replied, 'Oh ok.'" 610 F. App'x 953, 953 (11th Cir. 2015) (per curiam). *United States v. Ilarraza* also provides some support to the government, though it involved statements from the defendant himself. There, the defendant told an associate that a cooperating witness "wanted to buy firearms to send to the Dominican Republic," and the district court applied the enhancement on that basis. 963 F.3d 1, 10 (1st Cir. 2020). On appeal, the First Circuit upheld this determination, though it cited additional support—specifically, that

the defendant also told his associate that the cooperating witness was receiving payment from Santo Domingo. *Id.* at 11.[1]

A review of our cases applying the "reason to believe" element to other Sentencing Guidelines provisions likewise does not help Jackson. When deciding, pursuant to section 2K2.1(a)(4)(B) of the Sentencing Guidelines, whether a defendant had "reason to believe that the [underlying] offense would result in the transfer of a firearm or ammunition to a prohibited person," we explained that "[c]ourts have long equated 'reason to believe' either with the traditional probable-cause standard (which requires a 'probability or substantial chance' of something) or with an even lower standard . . . such as reasonable suspicion." *United States v. McKenzie*, 33 F.4th 343, 347-48 (6th Cir. 2022) (collecting cases). And we noted that "no court has held that it requires something more than probable cause." *Id.*

In *United States v. Torres*, we held—albeit on due-deference review—that a defendant had reason to believe that the undercover agent to whom he sold firearms "intended to use or dispose of the firearm[s] unlawfully" because of the "secretive, street-level nature of the cash sales," "the undercover team's comments that they would purchase 'dirty' or stolen guns[,] and their comments about reselling the guns in places 'like Chicago' or 'down by the border.'" 644 F. App'x 663, 667

---

[1] In *United States v. Mujaahid*, the Second Circuit found it "unclear" whether the defendant had the "requisite knowledge" at the time of one transfer but ultimately concluded that he had such knowledge by the time of a subsequent transfer. No. 21-2494, 2023 WL 4417356, at *2 (2d Cir. July 10, 2023). The court's hesitation regarding the prior transfer arose from the fact that "the record does not reveal whether [a confidential informant] was already in possession of the firearm when he informed [the defendant] that he and his associate would send the weapon to the Dominican Republic." *Id.* At the subsequent transaction, however, the defendant had already heard the foregoing statement and a second statement by another confidential informant that "he is always buying firearms and selling them in the Dominican Republic." *Id.* at *1. These statements are similar to the one made by the undercover agent to Jackson, and Jackson has not raised any temporal issue—such as that the undercover agent referenced Canada only after Jackson had transferred the firearms. The PSIR indeed suggests that the undercover agent's statement preceded the transaction.

(6th Cir. 2016) (citation modified) (applying section 2K2.1(b)(5)).  Although that defendant also commented that one firearm was "useful . . . because it does 'not leave casings behind,'" we ultimately upheld the enhancement based on the statements about "dirty" guns and "sell[ing] the guns out of state."  *Id.*  And we upheld that same enhancement in *United States v. Turner* because the numerous transactions there suggested that "[t]he buyers wanted a slew of guns"; the defendant knew the buyers would accept "dirty" guns and wanted to turn a profit on them; and the "context of the sale" involved "hidden handguns and parked car dealings."  698 F. App'x 803, 806–07 (6th Cir. 2017).[2]

The bottom line of these cases is that a district court may look to statements and context and draw commonsense conclusions.  *See McKenzie*, 33 F.4th at 349; *United States v. Pawlak*, 822 F.3d 902, 912 (6th Cir. 2016) (addressing an enhancement under section 2K2.1(b)(5)), *abrogated on other grounds by Beckles v. United States*, 580 U.S. 256 (2017).  Here, an undercover agent told Jackson that, in the words of the PSIR, "they trafficked firearms into Canada."  R. 170 at 5.  At the next sale, Jackson "observed" the agent's use of a "hidden compartment" in the agent's vehicle for the firearms that Jackson had just sold him.  *Id.* at 6.  As in *Mendoza*, *Pratts*, and *Ilarraza*, these facts gave Jackson reason to believe that the firearms would be transported out of the United States.  U.S.S.G. § 2K2.1(b)(6)(A).

To be sure, Jackson identifies cases involving more circumstantial evidence of knowledge than is present here.  But we have found no authority suggesting that a statement from the

---

[2] We agree with Jackson that certain elements relevant to the unlawful use of a firearm do not necessarily translate to the international export of a firearm.  For example, although wearing concealing clothing or selling firearms to a known drug dealer might support an inference that the seller had reason to believe the firearms would be used unlawfully, those facts likely do not suggest much about the potentially international nature of the transaction.  These cases disfavor Jackson's position, however, because of what a seller should reasonably conclude from the context of the sale and the buyers' statements.

defendant's buyer is insufficient to support this enhancement. We presume that had the undercover agent stated, "I *will* traffic *this* firearm to Canada," that would suffice. And conversely, Jackson's claim of error would be stronger if the agent merely stated that he had "once" or "occasionally" trafficked contraband to Canada. But here, the PSIR characterized the agent's statement as that he "trafficked firearms into Canada," and Jackson did not dispute that claim. R. 170 at 5; R. 197, PageID 1421. That assertion, coupled here with the use of a hidden compartment for the firearms, suffices under even de novo review to establish that Jackson had reason to believe that there was a "probability or substantial chance" that the firearms would be trafficked out of the United States. *McKenzie*, 33 F.4th at 348 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).[3]

Jackson protests the dearth of factual development in the record concerning the June 12 and 13 transactions. But he could have sought testimony from the undercover agent or other witnesses, yet chose not to. *See United States v. Brown*, No. 22-5010, 2022 WL 17336091, at *3 & n.2 (6th Cir. Nov. 30, 2022) (citing *United States v. Armstrong*, 920 F.3d 395, 399–400 (6th Cir. 2019)). And "[i]t is well established under Sixth Circuit precedent[] . . . that "when facts in the presentence report are undisputed, the district court can rely on them for purposes of sentencing." *United States v. Harris*, 790 F. App'x 673, 676 (6th Cir. 2019) (quoting *United States v. Brandon*, 736 F. App'x 573, 575 (6th Cir. 2018)); *see also* Fed. R. Crim. P. 32(i)(3) ("At sentencing, the court[] . . . may accept any undisputed portion of the presentence report as a finding of fact."). Jackson's counsel at sentencing stated that "we don't have any disagreement about the underlying facts," including, as counsel put it, that "Jackson was . . . there for the sale" and that "[a]t the sale,

---

[3] Jackson argues, briefly, that because the PSIR refers to the vehicle compartment as "hidden" and the government's sentencing memorandum describes it merely as "a" compartment—i.e., omitting "hidden"—there is an "inconsistency" that limits the weight of this fact. Appellant Br. 11, 19. We do not read this difference to suggest that the government affirmatively disagreed with the PSIR regarding the nature of the compartment.

an undercover agent stated that they sold the firearms into Canada." R. 197, PageID 1421. The record, as it stands, supports the enhancement, and we cannot fault the district court for failing to conduct an investigation into facts that Jackson's sentencing counsel conceded were undisputed.

Jackson's final argument within this claim of error raises the issue of sentencing manipulation or entrapment. He acknowledges that our review is for plain error because he did not raise the issue in the district court. He also acknowledges that this court has not recognized the availability of relief on either theory. *See, e.g.*, *United States v. Jackson*, No. 24-3304, 2025 WL 552827, at *3 (6th Cir. Feb. 19, 2025) (noting that "this circuit has yet to recognize [either theory] as a basis for downward variance").

This argument suffers from several defects. First, "[w]here the law is unclear, any error is not 'plain.'" *United States v. Parker*, No. 24-1159, 2025 WL 1136318, at *5 (6th Cir. Apr. 17, 2025) (quoting *United States v. Price*, 901 F.3d 746, 751 (6th Cir. 2018)); *see also United States v. Johnson*, 95 F.4th 404, 416 (6th Cir.), *cert. denied*, 144 S. Ct. 2619 (2024). Second, it is not clear that either theory applies. "Sentencing entrapment occurs when 'the government induces a defendant to commit a more serious crime when he was predisposed to commit a less serious offense.'" *United States v. Allen*, 93 F.4th 350, 357 (6th Cir. 2024) (quoting *United States v. Mack*, 841 F.3d 514, 523 (D.C. Cir. 2016)). But as the district court noted, Jackson asked the undercover agent only whether he was with the police, suggesting that the domestic or international nature of the firearms trafficking was immaterial to Jackson. Jackson has not provided any basis to think that he was disposed to deal firearms *only* domestically.

Sentencing manipulation "is defined as 'improper conduct' by the government 'that has the effect of increasing the defendant's sentence.'" *United States v. Greer*, 415 F. App'x 673, 676 (6th Cir. 2011) (quoting *United States v. Turner,* 569 F.3d 637, 641 (7th Cir. 2009)). Although

we acknowledge the ease with which undercover agents could inject this four-level enhancement into an operation that otherwise might not have contemplated international export, even those circuits that have recognized sentencing-manipulation claims generally do so in more egregious circumstances than those here. The First Circuit, for example, rejected an argument that undercover agents could have asked a defendant to transport a lesser quantity of drugs, in turn reducing the defendant's sentencing exposure, because that possibility, "without more, does not establish that the agents engaged in the kind of 'extraordinary misconduct' that is required of a successful sentencing manipulation claim." *United States v. Perez-Vasquez*, 6 F.4th 180, 204 (1st Cir. 2021) (quoting *United States v. Rivera-Ruperto*, 852 F.3d 1, 15 (1st Cir. 2017)); *see also United States v. Benito Lara*, 56 F.4th 222, 226 (1st Cir. 2022) (sentencing-manipulation claim fails if the defendant claims merely that "the crime . . . exceeded in degree or kind what the defendant had done before" (quoting *United States v. Montoya*, 62 F.3d 1, 3–4 (1st Cir. 1995))); *United States v. Davidson*, 165 F.3d 15, 1998 WL 777766, at *4 (2d Cir. 1998) (unpublished table decision) (limiting sentence-manipulation claims "to outrageous official conduct that serves to 'overbear the will' of the defendant.") (quoting *United States v. Gomez*, 103 F.3d 249, 256 (2d Cir. 1997))); *United States v. Gallardo*, 977 F.3d 1126, 1144 (11th Cir. 2020) (noting that the Eleventh Circuit "has consistently rejected claims based on the government's decision to involve a large quantity of drugs in its sting operation" because such conduct does not amount to "'extraordinary misconduct' that was 'sufficiently reprehensible'" (quoting *United States v. Osmakac*, 868 F.3d 937, 959 (11th Cir. 2017))). *But cf. United States v. Moran*, 612 F.3d 684, 692 (8th Cir. 2010) (applying a potentially lower standard that asks whether "the officer's [*sic*] engaged in the higher drug quantity transactions 'solely to enhance [the defendant's] sentence.'" (quoting *United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009))).

In sum, there is no plain error and neither sentencing entrapment nor sentencing manipulation provides a basis for relief.

**B.**

Jackson's second claim of sentencing error arises from the district court's denial of an offense-level reduction for acceptance of responsibility. As Jackson acknowledges, however, his sentencing counsel agreed with the district court's statement that "there is no objection to there not being a three-level or even two-level downwards for acceptance of responsibility." R. 197, PageID 1398. The district court stated that it "consider[ed] that a concession," and Jackson's counsel replied, "All of that is correct, Your Honor." *Id.*

Jackson asks us to exercise our discretion to consider the issue anyway. We decline to do so. At best, counsel's concession was invited error. *See United States v. Jett*, No. 24-1667, 2025 WL 2837885, at *9 (6th Cir. Oct. 7, 2025) (finding either waiver or invited error where defendant provided a "plain, positive concurrence with the district court's conclusions") (internal quotation marks omitted); *United States v. Carter*, 89 F.4th 565, 568–70 (6th Cir. 2023) (treating defendant's explicit agreement with the district court that it had addressed all non-frivolous arguments as waiver or invited error) . We review invited errors only for manifest injustice. *Carter*, 89 F.4th at 570. Jackson has shown no manifest injustice.[4]

---

[4] Jackson argues alternatively that we should consider this argument because his counsel at sentencing provided ineffective assistance by waiving it. As Jackson acknowledges, "this Court does not routinely consider ineffective assistance of trial counsel on direct appeal . . ." Appellant's Br. at 36. Instead, "[f]ederal habeas corpus review is 'the preferred mode for raising [that argument]." *United States v. Embry*, 644 F. App'x 565, 573 (6th Cir. 2016) (quoting *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012)).

**C.**

That brings us to Jackson's final claim of error—that the district court failed to consider Jackson's youth and difficult childhood, resulting in a substantively unreasonable sentence. We review such claims for abuse of discretion and "ask whether 'the court placed too much weight on some of the § 3553(a) factors and too little on others' in reaching its sentencing decision." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753–54 (6th Cir. 2020) (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)). In doing so, "we must respect the district court's reasoned discretion," though "this discretion is not without limit." *Id.* at 754. "Sentences within a defendant's Guidelines range are presumptively reasonable." *Id.* (citing *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010)). At root, we must decide "whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).

Here, we cannot say that the court abused its discretion by imposing a within-Guidelines sentence at the bottom of the recommended range. The court stated that it considered deterrence of both Jackson and others to be "really big in this sentence." R. 197, PageID 1411. Although it negatively referenced Jackson's ongoing state proceedings, *id.* at 1446, 1458, the court also made clear that Jackson was "presumed innocent" and that "[t]here could be an acquittal or the case could be dismissed," *id.* at 1432–33; *see also id.* at 1458 (stating that the court will "keep those uncertainties in mind"). The court noted Jackson's other pretrial conduct—"test[ing] positive" on drug tests and then deciding to "stop[] showing up" to pretrial services—as relevant to the court's decision. *Id.* at 1445, 1458. And, in any event, we have held that a district court may consider "pending charges while selecting a sentence within the advisory guideline range." *United States v. Alford*, 332 F. App'x 275, 284–85 (6th Cir. 2009) (gathering authorities); *accord United States*

*v. Culberson*, No. 24-1061, 2025 WL 1166895, at *4 n.1 (6th Cir. Apr. 22, 2025); *see also United States v. Werman*, 828 F. App'x 316, 319 (6th Cir. 2020) ("The use of the pending charges to support the district court's determination that [the defendant] posed a danger to the public, based on his lengthy criminal history, was not an abuse of discretion."). Based on these considerations, we cannot conclude that the district court unduly emphasized Jackson's pending state proceedings.

Next, Jackson briefly challenges the district court's assessment of sentencing disparities. The district court understood the average and median sentences for similarly situated individuals, though Jackson argues that the sample size was limited and did not include individuals with different criminal-history categories. *But see United States v. Smith*, 510 F.3d 603, 610 (6th Cir. 2007) ("The goal of 18 U.S.C. § 3553(a)(6) is to eliminate 'disparities among defendants with *similar records* who have been found guilty of similar conduct.'" (quoting *United States v. Davis*, 458 F.3d 491, 495–96 (6th Cir. 2006)) (emphasis added). The district court explained that Jackson's pretrial conduct and criminal history called for a longer sentence than the average or median case. *See United States v. Foster*, No. 23-3400, 2024 WL 1134685, at *3 (6th Cir. Mar. 15, 2024) (no abuse of discretion for a sentence that was above the median and average length but was still within the recommended range and supported by the district court's explanation). The court further concluded that Jackson was more "dangerous" than his codefendants, "sold more weapons than anyone else indicted" in this case, and seemed to appreciate the unlawful character of his conduct based on his efforts to conceal his identity during at least one of the transactions. R. 197, PageID 1445, 1459. The court also evaluated Jackson relative to other individuals, not just his codefendants. *E.g.*, *id.* at 1445–46 (finding that Jackson's criminal history and "undeterred" conduct made him "one of the most dangerous men who stood before me in a while").

Nor did the district court underappreciate Jackson's youth. The district court expressly noted its consideration of the latest version of the age-based policy statement found in the Sentencing Guidelines, which provides that "[a] downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense" because of "risk factors" such as "environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships." U.S.S.G. § 5H1.1; R. 197, PageID 1427. The district court determined that Jackson's childhood circumstances, while not "ideal," were not "horrific" and did not warrant a downward variance. R. 197, PageID 1427–28, 1446. It cited his limited juvenile record as an indication that Jackson's childhood circumstances did not appear to be severe—a causal inference with which Jackson takes issue. *Id.* at 1427. Although that inference may be dubious, the court explained that it interpreted Jackson's lone juvenile charge as "not very unlike youthful indiscretions," *id.* at 1426, and stated later that Jackson's conduct "escalated in such a serious way since" his juvenile offense, *id.* at 1447. These statements suggest that the court was seeking indicia of a troubled childhood—perhaps inartfully—and found none that "justif[ied] what's happened since then." *Id.* at 1428.

Consistent with this interpretation, the court noted that Jackson's "family ties are significant" given that his mother and brother attended the sentencing hearing, that "many of those who appear before" the court lack such "familial connections," and that Jackson "told the probation officer that [he] felt loved and cared for as a child." *Id.* at 1459–60. The court explained that, in its view, Jackson's family's financial struggles did not "justify [Jackson's] response"—i.e., his involvement in criminal conduct. *Id.* at 1460.

The court determined that although it would require certain sentences to run consecutively to others to achieve a 168-month sentence, its consideration of Jackson's ability to improve his "conduct and condition" supported imposing no more than the bottom sentence recommended by the Sentencing Guidelines. *Id.* at 1461. Reviewing the court's entire analysis, and considering the presumptive reasonableness that attends a within-Guidelines sentence, we cannot say the district court imposed a sentence reflecting an abuse of discretion.

### III.

For the reasons set out above, we **AFFIRM**.