# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3362
_____

United States of America

*Plaintiff - Appellee*

v.

Emmanuel K. John

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 18, 2021
Filed: March 3, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury convicted Emmuanel John of six counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On appeal, John asserts the district court[1] erred when it denied his request for an entrapment instruction and when it denied his motion for a mistrial.  John further claims that the

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

sentence imposed by the district court is unreasonable and the result of sentencing manipulation. We affirm.

## I. BACKGROUND

On May 23, 2018, local law enforcement executed a search warrant at a residence in Omaha. The target of the search was Dak Lam, who resided with his mother and several family members that had migrated to the United States from South Sudan, including his uncle, Yien Chiek. During the search, Chiek approached law enforcement and offered his assistance as a paid informant. Alcohol, Tobacco and Firearms ("ATF") Special Agent Anthony Sorenson became Chiek's primary contact with the government. Special Agent Sorenson worked with Chiek to develop a backstory and to purchase firearms and narcotics from potential targets within the South Sudanese community in Omaha.

Chiek initially arranged to purchase a gun from Kan Tap at a gas station parking lot on July 19, 2018. At the appointed time, while law enforcement provided surveillance, Chiek drove an ATF vehicle equipped with cameras and audio equipment. Tap unexpectedly brought along a third individual, Emmanuel John. A video shows Tap introducing Chiek to "Emmanuel" and both men responded, "Nice to meet you." Once Tap and John got into the vehicle, Tap directed Chiek to drive to a different location to meet a fourth individual, Reuben Rowe, whom John had contacted about selling a gun. When they arrived at the new location, Rowe got into the backseat and showed Chiek a Jimenez pistol. Chiek purchased the gun using controlled funds and Rowe left on foot. Chiek then drove Tap and John back to the parking lot. John can be heard on the recording telling Chiek to "just call Kan" if he wants to buy another gun.

On July 31, 2018, Chiek contacted Tap to purchase another gun. The transaction occurred at the same parking lot and involved Tap, John, and Rowe. This time, Rowe arrived at the parking lot on foot. ATF again provided the vehicle, money, and surveillance for Chiek who purchased a Kimber 9 mm pistol.

On August 15, 2018, John sold a Jimenez handgun and a Star handgun directly to Chiek. The sale was initiated by John who contacted Chiek through Facebook and text messages to arrange the meeting. Chiek bought four more guns from John on August 21, 23 and 24. In each of these transactions, John acted alone. Over a period of 36 days, John sold or facilitated the sale of eight firearms to Chiek in six separate transactions.

John was indicted on four counts of being a felon in possession of a firearm. The government later filed a superseding indictment to address Rehaif v. United States, 588 U.S. ___, 139 S. Ct. 2191, 2200 (2019). John proceeded to a trial that ended in a mistrial. Video evidence admitted during the trial connected John to two more controlled purchases. The government filed a second superseding indictment adding two additional counts.

John informed the district court before trial that he planned to present an entrapment defense. He also filed a motion *in limine* seeking to exclude any reference to gang activity, information about the dangers associated with being a confidential informant, and details about John's prior convictions. The district court granted the motion, except it allowed Chiek to identify Dak Lam as being involved with a gang and to discuss how Chiek became connected to the ATF as an informant. The parties stipulated to John's status as a felon.

During the defense case, Nyalam Lam was called as a witness for the purpose of establishing whether Chiek knew John before the first controlled purchase. During direct examination, Ms. Lam testified about Sudanese culture, specifically noting in the culture young people are expected to respect their elders. On cross-examination, the government asked Ms. Lam about the Sudanese culture's views on gang membership, street violence, firearms trafficking, and robbery. This line of questioning brought an immediate objection from John's counsel, who argued at sidebar that the government had breached the stipulation because John's prior convictions involved robbery. The district court struck the question but denied

-3-

John's motion for mistrial. John later testified that he knew Chiek from visiting the house where Chiek lived with his family, and through Facebook messenger communications unrelated to the firearms purchases. Chiek insisted on rebuttal, however, that he never met John before the first controlled purchase.

Following the close of the government's rebuttal case, John sought to reopen his case to further develop evidence he claimed had been overlooked in the defense case in chief. The government objected, and the district court denied the request. Finding no evidence of inducement, the district court declined to give an entrapment instruction. Even so, defense counsel obliquely argued entrapment during closing by stating several times that the government was "manufacturing crime."

John was convicted on all six counts. The Presentence Investigation Report ("PSIR") determined that John's base offense level under the Sentencing Guidelines was 24. He received a four-level enhancement due to the number of firearms sold and a two-level enhancement because at least one firearm was stolen, but his total offense level was capped at 29. In criminal history category IV, John's advisory Guidelines range was 121-151 months of imprisonment. John filed a motion for a downward departure, arguing the government engaged in sentencing manipulation by buying eight firearms instead of stopping after the first purchase. At the sentencing hearing, the government explained that investigations involving confidential informants cannot easily be terminated after one controlled purchase because the informant would be "burned" and unable to get "as many illegal guns off the street" as possible. By allowing the operation with Chiek to continue, the government asserted they were able to charge 13 defendants. The district court sentenced John to a total term of 290 months' imprisonment.

## II.   ANALYSIS

John asserts four arguments on appeal: (1) the district court erred by denying his request for an entrapment instruction; (2) the district court abused its discretion by denying his motion for a mistrial; (3) the sentence imposed was the result of

-4-

sentencing manipulation; and (4) the sentence was procedurally and substantively unreasonable.

## A.    Entrapment Instruction

We review the denial of an entrapment instruction *de novo*.  United States v. Strubberg, 929 F.3d 969, 976 (8th Cir. 2019) (quoting United States v. Cooke, 675 F.3d 1153, 1155-56 (8th Cir. 2012)).  A defendant is entitled to an entrapment instruction only if there is sufficient evidence from which a reasonable jury could find entrapment.  United States v. Tobar, 985 F.3d 591, 592 (8th Cir. 2021).  "An entrapment defense has two elements: government inducement of the crime, and a defendant's lack of predisposition to commit the crime."  Id.

"Inducement exists when the government 'implanted the criminal design' in the defendant's mind."  United States v. Young, 613 F.3d 735, 747 (8th Cir. 2010) (quoting United States v. Eldeeb, 20 F.3d 841, 843 (8th Cir. 1994)).  "Inducement may include 'pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship.'"  United States v. Harriman, 970 F.3d 1048, 1057 (8th Cir. 2020) (quoting United States v. Clarett, 907 F.3d 1100, 1102 (8th Cir. 2018)).  "It requires more than a favorable opportunity to commit a crime."  Id.  If the defendant establishes inducement, the burden shifts to the government to show the defendant's predisposition to commit the crime.  Tobar, 985 F.3d at 592.

John never produced evidence of inducement.  While the parties dispute whether Chiek knew John before the first controlled buy, the timing of their acquaintance is of no import.  Even if Chiek knew and attempted to do business with John at some earlier date, the evidence established that John was contacted by Tap, not Chiek, about the first controlled purchase.  Chiek never applied pressure, never gave assurances, and never persuaded, threatened, harassed, or promised anything to John.  By the third transaction, John himself initiated contact with Chiek—further

evidence that he was not induced to commit the crime. Because John did not meet his burden of establishing inducement, the district court did not err in declining to instruct the jury on entrapment.

### B.    Motion for Mistrial

We review a district court's denial of a motion for mistrial for abuse of discretion. United States v. Branch, 591 F.3d 602, 607 (8th Cir. 2009). "[W]hether a trial has been so tainted by prejudicial testimony that a mistrial should be declared lies within the discretion of the district court," United States v. Muza, 788 F.2d 1309, 1312 (8th Cir. 1986), which is "in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." United States v. Hollins, 432 F.3d 809, 812 (8th Cir. 2005). When analyzing the prejudicial effect of improper testimony, consideration should be given to the context of the error along with the strength of the evidence of guilt. United States v. Thompson, 533 F.3d 964, 971 (8th Cir. 2008) (quotation omitted). Ordinarily, a jury's exposure to improper testimony can be cured by relief less drastic than a mistrial, such as an instruction to the jury to disregard the testimony. United States v. Sherman, 440 F.3d 982, 987 (8th Cir. 2006).

When the defense called Nyalam Lam as a witness, counsel asked about Sudanese culture and Ms. Lam testified that young people should respect their elders. While John argues the government's cross-examination about Sudanese culture and its views on gang membership, firearms trafficking, and robberies was a violation of the stipulation as to John's status as a felon and improper, there was no suggestion that John himself was involved in robberies. Even assuming the testimony was improper, the weight of the evidence produced at trial demonstrates that the testimony was not prejudicial. The district court instructed the jury that the question would be stricken and should be disregarded. We find no abuse of discretion.

## C. Sentencing Manipulation

When evaluating the refusal to grant a downward departure or variance based on alleged sentencing manipulation, "we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Moran, 612 F.3d 684, 691 (8th Cir. 2010). "Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation." United States v. Torres, 563 F.3d 731, 734 (8th Cir. 2009). It is permissible for law enforcement to continue to use an informant to establish guilt beyond a reasonable doubt, to probe the depth and extent of criminal activity, and to determine the identity of coconspirators. Id. To succeed on his claim of sentencing manipulation, John must prove by a preponderance of the evidence that the officers engaged in conduct solely to enhance his sentence. United States v. Sacus, 784 F.3d 1214, 1220 (8th Cir. 2015) (quoting Torres, 563 F.3d at 734) (cleaned up). When there is evidence of legitimate law enforcement goals and purposes to support the length or nature of the investigation, there is no cognizable claim of sentencing manipulation. Id.

Over 36 days, John sold or facilitated the sale of eight guns to Chiek during six different transactions. The sales were part of a larger ATF investigation into firearms trafficking that ultimately resulted in 13 arrests. At trial, Special Agent Sorenson explained that complex investigations take time, and agents typically do not effectuate an immediate arrest because doing so would render the informant useless and reduce their ability to apprehend more criminals. At sentencing, the government explained the purpose of the operation was to get as many guns off the street as possible. The government proffered legitimate law enforcement reasons as to why the investigation continued after the initial sale on July 19, 2018. John has not offered a reason to suspect the government purposefully facilitated the purchase of additional guns solely to enhance his sentence. We find no error.

### D. Procedural and Substantive Reasonableness

"We review a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Ayres, 929 F.3d 581, 582-83 (8th Cir. 2019). Where, as here, the defendant fails to object to the purported procedural error at sentencing, "the error is forfeited and may only be reviewed for plain error." United States v. Thigpen, 848 F.3d 841, 847 (8th Cir. 2017) (quotation omitted).

John argues the district court made several procedural errors at sentencing, which include not considering all the 18 U.S.C § 3553(a) factors, basing the sentence on inappropriate concerns, and failing to adequately explain the sentence. Because John did not object to the facts in the PSIR, they are deemed admitted for sentencing purposes. United States v. Davila, 418 F.3d 906, 910 (8th Cir. 2005). "[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered." United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006) (citation omitted). The sentencing transcript makes clear that the district court considered the § 3553(a) sentencing factors, even highlighting several of them, when it explained the reasons for its sentence. The district court committed no procedural error, plain or otherwise.

The substantive reasonableness of a sentence is reviewed under an abuse of discretion standard. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "Our review of the substantive reasonableness of a sentence is narrow and deferential, and it is the unusual case when we reverse a district court sentence— whether within, above, or below the applicable Sentencing Guidelines range—as substantively unreasonable." United States v. Whitlow, 815 F.3d 430, 436 (8th Cir. 2016) (quotation omitted). While we consider the extent of a variance outside the applicable Sentencing Guidelines, we also give due deference to the wide latitude afforded district courts when weighing the sentencing factors and assigning some

greater weight than others.  <u>United States v. Lundstrom</u>, 880 F.3d 423, 445 (8th Cir. 2018).

The district court's sentence—nearly double the top end of the Guidelines range—is harsh but it is anchored in the factors set forth in § 3553(a).  The court gave due consideration to the parties' arguments, highlighting that John did not merely possess firearms but repeatedly transported and sold them.  The district court noted John's history included several felony convictions and the commission of additional crimes while under supervision.  The district court focused on the violent nature of gun crimes, even more concerning in John's case because several of the guns were stolen and John was prohibited from possessing even a single firearm.  Specific deterrence is an appropriate consideration that can weigh in favor of a longer sentence.  <u>United States v. Stone</u>, 873 F.3d 648, 649-50 (8th Cir. 2017).  John's perceived lack of remorse at trial was also an appropriate factor considered by the district court.  <u>United States v. VandeBrake</u>, 679 F.3d 1030, 1037 (8th Cir. 2012).

As compared to other defendants, the district court noted the specific facts and circumstances relevant to John that warranted a significantly longer sentence than other defendants.  Even if we might have concluded that a different sentence was appropriate, this is an insufficient reason for reversal.  <u>United States v. Hill</u>, 552 F.3d 686, 691 (8th Cir. 2009) (quoting <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007)).  The record reflects the district court's thoughtful weighing of the appropriate factors, and the sentence reflects the seriousness of the offenses in conjunction with the other aggravating factors identified at sentencing.  We find no abuse of discretion.

## III.   CONCLUSION

We affirm the judgment of the district court.

_____