# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1156
_____

United States of America

*Plaintiff - Appellee*

v.

Joshua Johnson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: October 23, 2025
Filed: December 17, 2025
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Joshua C.J. Johnson of attempted sex trafficking of a child and destruction of evidence, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), 1594(a), and 1519. On appeal, Johnson challenges the district court's[1] admission of

_____

[1]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

the undercover agent's lay-opinion testimony, denial of his motion to contact a juror, and not granting a downward variance based on his claim of sentencing manipulation. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Skip the Games is a prostitution website. While it says it prohibits minors' use, its only safeguard is self-verification. Aware that children are trafficked on Skip the Games, Special Agent Hillary Nielsen, with Homeland Security, posted an undercover profile on December 4, 2023.

Nielsen's profile advertised a 45-year-old woman, "Abi," in Hiawatha, Iowa. Two days after it was posted, Johnson responded to the ad. When he asked Abi's age and whether she was affiliated with law enforcement, Nielsen plainly stated "she" was really 13 years old.

Johnson then sent several replies, including: "I don't mess with u der age srry," "Do t mess with Under age not trying to go to jail," "That's illegal in every state," and "IDK I've seen people get set up like this." Despite these, after Abi assured him she was neither "finna tell"[2] nor associated with law enforcement, he continued messaging her. His next message was, "Got any pics?" Nielsen sent an altered photo of herself, portraying a young girl. He then asked for "skin pics" and who was the "oldest guy" she had been with. Nielsen often referred to Abi's minor status—her age and school—and used juvenile slang. When Johnson eventually suggested a location to meet up, Abi stated, "Umm yeah i can prolly walk there,"[3] implying she was too young to drive.

Three days after the posting, Johnson offered Abi $140 for a half hour of her time, requesting a "69 n f__k." Johnson and Abi agreed on a time and place. When he asked if he needed to bring protection, Nielsen replied, "Im not finna get a std at

---

[2]Explained at trial as "going to" or "about to."
[3]Explained at trial as "probably."

13." Johnson again asked if Abi was "law enforcement or predator trap [s__t] or anything like that cause it's intrapement [sic] if u are." After Abi texted that she was doing this on her own, he commented on how mature she sounded for her age.

Johnson arrived at the rendezvous that afternoon. Nielsen called, directing him in an adolescent voice to another location. There, two Special Agents stopped his vehicle to interview him. Johnson stated he wanted nothing to do with a minor and was going to block her number. The agents told him he was not under arrest and free to leave but that they were seizing his phone. After he begged to make a call, the agents gave him the phone. Johnson made several calls, did not reach anyone, then angled his phone away from the agents, wiped it, and pretended to make another call. Seeing what Johnson had done, one agent re-seized the phone, confronting him about destroying its contents. Johnson first said that the battery had died but later admitted to erasing the phone. Lost were pictures, text messages, contacts, call history, browser history, and downloads.

At trial, Johnson swore he thought Abi was either a 45-year-old adult role-playing as a 13-year-old girl, or a child being trafficked. He emphasized the maturity of Abi's messages and his prior 20 visits to Skip the Games. He swore he did not intend to have sex with a minor, and that if he had seen Abi was really 13 years old, he would have tried to save her. He also swore he wiped his phone to show law enforcement he wanted nothing to do with a 13-year-old girl.

The jury convicted Johnson of attempted sex trafficking of a child and destruction of evidence. The district court sentenced him to 292 months' imprisonment for his attempted-sex-trafficking-of-a-child charge, and 240 months for his destruction-of-evidence charge—both sentences to run concurrently. Johnson appeals.

## II.

Johnson argues that the district court erred in admitting Nielsen's opinion testimony about the maturity of three of Abi's responses. During Johnson's

conversation with Abi, he first asked her what she liked. Abi responded, "Ummm this isnt really about what i like." He then requested discussing in person what to do on their "date." She responded, ". . . i dont do surprises sry."[4] After some confusion, Abi clarified, "Lol i meant i dont do dates when i dont know what im gettin into." At trial, Johnson's counsel asked Nielsen whether these responses were fairly mature and suggested experience. Nielsen replied she thought the responses were indicative of someone familiar with prostitution, or experience being a sex-trafficked child. Johnson argues Nielsen's opinion was impermissible expert testimony. He further claims that it does not meet the requirements for a lay-witness opinion under Federal Rule of Evidence 701. Johnson did not object to this testimony at trial.

Generally, a district court's admission of lay-opinion testimony is reviewed for an abuse of discretion. *United States v. Oslund*, 453 F.3d 1048, 1059 (8th Cir. 2006). However, since Johnson did not properly preserve the potential error, plain-error review applies. *See United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). To prove plain error, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Id*. at 550, *quoting Johnson v. United States*, 520 U.S. 461, 467 (1997). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*., *quoting Johnson*, 520 U.S. at 467.

Rule 701 permits lay-opinion testimony if it is "rationally based on the perception of the witness"; "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue"; and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *United States v. Sorensen*, 148 F.4th 992, 996 (8th Cir. 2025); **Fed. R. Evid. 701**. Law enforcement officers, as non-expert witnesses, "may offer testimony that is rationally based on their perceptions during the investigation." *United States v. Overton*, 971 F.3d 756, 762 (8th Cir. 2020), *citing* **Fed. R. Evid. 701**. Lay-opinion

---

[4]Explained at trial as "sorry."

testimony from law enforcement officers interpreting evidence "is admissible under Rule 701 only when the law enforcement officer was a participant in the conversation, had personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." *United States v. Dierks*, 978 F.3d 585, 592 (8th Cir. 2020).

Nielsen satisfies these exceptions. She posed as Abi, modifying her image to represent Abi. She messaged Johnson. Nielsen had personal knowledge of the information exchanged in the conversation. She can provide a non-expert interpretation of her messages with Johnson. *See Dierks*, 978 F.3d at 592–93. This testimony was permissible under Rule 701 because it was based on Nielsen's general knowledge of child-sex trafficking on sites like Skip the Games. *See United States v. Watkins*, 127 F.4th 1142, 1145 (8th Cir. 2025) ("A witness's professional training and experience concerning a subject does not, standing alone, render h[er] testimony about that subject expert testimony." (cleaned up)); *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) ("A witness may provide lay opinion testimony about facts within his or her range of generalized knowledge, experience, and perception." (internal quotation marks omitted)). This testimony helped the jury determine whether Abi's responses were too mature for Johnson to believe she was really age 13 (and it did not fall within the scope of Rule 702). *See* **Fed. R. Evid. 701**, **702**. Law enforcement officers can provide lay-opinion testimony about the level of maturity conveyed in their own messages. *Cf. United States v. Peoples*, 250 F.3d 630, 640–41 (8th Cir. 2001) (ruling that a district court erred in admitting an officer's lay-opinion testimony interpreting conversations because she "lacked first-hand knowledge" and "[h]er opinions were based on her investigation after the fact, not on her perception of the facts"). Johnson cannot show that the district court erred, let alone plainly erred.

The district court properly admitted Nielsen's responsive testimony about the maturity of Abi's responses.

III.

Johnson argues that the district court's denial of his motion to contact the jury foreperson is an abuse of discretion. After trial, the jury foreperson stated he heard another juror say that he was willing to change his vote in order to make it on time to his vacation. Johnson claims that an outside party likely created the juror's potential hastiness. The district court, however, found Johnson's claim speculative.

This court gives "substantial weight to the trial court's appraisal of the prejudicial effects of extraneous information on the jury, since the trial judge has the advantages of close observation of the jurors and intimate familiarity with the issues at trial." *United States v. Cheyenne*, 855 F.2d 566, 568 (8th Cir. 1988). The district court's "decision whether to conduct an evidentiary hearing over such allegations will be affirmed absent an abuse of discretion." *United States v. Wintermute*, 443 F.3d 993, 1002 (8th Cir. 2006). "Federal Rule of Evidence 606(b) generally precludes inquiry into intrajury communications." *United States v. Johnson*, 495 F.3d 951, 981 (8th Cir. 2007). An exception to the Rule permits jurors to testify about whether "an outside influence was improperly brought to bear on any juror." **Fed. R. Evid. 606(b)(2)(B)**. "Before a hearing may be granted, however, the moving party should show that outside contact with the jury presents a reasonable possibility of prejudice to the verdict." *Johnson*, 495 F.3d at 981 (cleaned up).

Improper, outside communication or tampering with a juror in a criminal case about matters pending before the jury is "presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954). Speculative contact between jurors and outside parties, however, does not create this presumption of prejudice. *See United States v. Phillips*, 609 F.2d 1271, 1274 (8th Cir. 1979).

Johnson's argument is purely speculative. He only guesses that an outside person influenced a juror. Since Johnson did not present any evidence (except for pure speculation) that an outside party influenced the juror to hasten his vote, he fails to raise a viable claim of outside influence. *See Wintermute*, 443 F.3d at 1002–03

("Speculation and unsubstantiated allegations do not present a colorable claim of outside influence of a juror."); **United States v. Muhammad**, 819 F.3d 1056, 1062 (8th Cir. 2016) ("[A]n evidentiary hearing is not necessary if the movant fails to raise a colorable claim of outside influence." (internal quotation marks omitted)); **United States v. Moses**, 15 F.3d 774, 778 (8th Cir. 1994) ("Not every allegation of outside influence requires an evidentiary hearing."); **Phillips**, 609 F.2d at 1274 ("The denial of the motion for a new trial based on appellants' speculative claims of third party contact with a juror was not an abuse of discretion.").

Because Rule 606(b) prohibits Johnson's inquiry, the district court did not abuse its discretion in denying Johnson's motion to contact a juror.

IV.

Johnson argues that the district court erred by not granting a downward variance because the government engaged in sentencing manipulation. Under 18 U.S.C. § 1591(b)(1), enticing a minor under the age of 14 to engage in a commercial sex act has a mandatory minimum sentence of 15 years' imprisonment. The same offense with minors age 14 and older has a mandatory minimum sentence of 10 years' imprisonment. **18 U.S.C. § 1591(b)(2)**. He alleges Nielsen's decision to make Abi age 13, rather than age 14, impermissibly increased his sentence.

"Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation." **United States v. John**, 27 F.4th 644, 650 (8th Cir. 2022), *quoting* **United States v. Torres**, 563 F.3d 731, 734 (8th Cir. 2009). "[S]entencing manipulation, if present, is a violation of the Due Process Clause." **Torres**, 563 F.3d at 734. "When evaluating the refusal to grant a downward departure *or* variance based on alleged sentencing manipulation, 'we review the district court's factual findings for clear error and its legal conclusions de novo.'" **John**, 27 F.4th at 650 (emphasis added), *quoting* **United States v. Moran**, 612 F.3d 684, 691 (8th Cir. 2010) (considering a sentencing-manipulation challenge to the district court's denial "to grant a downward departure *or* variance" (emphasis added)).

-7-

Johnson first presented a "sentencing entrapment" claim in his motion for a downward variance. "Sentencing manipulation and sentencing entrapment are distinct defenses available to defendants." *United States v. Booker*, 639 F.3d 1115, 1118 (8th Cir. 2011). The district court here recognized the claim as a sentencing-manipulation argument, which Johnson now brings on appeal. The government argues that plain-error review should apply because the claim was not properly preserved. Since the district court considered a sentencing-manipulation claim in its denial of Johnson's downward variance, plain-error review does not apply. *See Palmer v. Miller*, 145 F.2d 926, 930 (8th Cir. 1944) ("This Court can review only rulings made by the trial court on questions which were brought to its attention and passed upon by it."); *United States v. Wisecarver*, 644 F.3d 764, 774 (8th Cir. 2011) (stating this court presumes the district court considered issues presented before it at sentencing). *Cf. Naca v. Macalester Coll.*, 947 F.3d 500, 501–02 (8th Cir. 2020) ("This court reviews only the specific arguments raised before the district court, as opposed to those arguments the district court *might* have deduced from the record as a whole." (internal quotation marks omitted)). *See also Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) ("An argument is not waived, though, if the argument on the issue before the district court was sufficient to permit the district court to rule on it." (citation and internal quotation marks omitted)). Thus, this court reviews "the district court's factual findings for clear error and its legal conclusions de novo." *John*, 27 F.4th at 650.

To prevail, Johnson must prove by a preponderance of the evidence that the officers made Abi age 13 solely to enhance his sentence. *See Torres*, 563 F.3d at 734. "When there is evidence of legitimate law enforcement goals and purposes to support the length or nature of the investigation, [however,] there is no cognizable claim of sentencing manipulation." *John*, 27 F.4th at 650.

Law enforcement had a legitimate goal in making Abi age 13. As the district court stated at sentencing:

There are limited government resources for conducting these sting operations. If the government's going to conduct sting operations and try to rid our society of people who are going to prey on children for sex, it follows that they're going to devote their resources to the worst of the worst. And the law has defined the "worst of the worst" as people going after children under the age of 13.

Devoting resources against those who prey on younger children is a legitimate law enforcement goal. *See **United States v. Musslyn***, 865 F.2d 945, 947 (8th Cir. 1989) (collecting cases) ("[U]ndercover operations utilized by government agencies to investigate, catch, and convict child pornography collectors have withstood [due process] challenge[s] . . . ."); ***United States v. Moore***, 916 F.2d 1131, 1139 (6th Cir. 1990) (finding undercover officers' purchase of an ad to detect and investigate those who "sell, purchase and traffic in child pornography" "necessary" because they operate in secrecy).

Applying this court's logic from its drug and firearm enforcement cases, the government had a legitimate law enforcement goal in making Abi age 13, in order to determine who would seek sex with a minor that young. *See **John***, 27 F.4th at 650 (finding a legitimate law enforcement goal in buying more guns from the defendant "to get as many guns off the street as possible"); ***Moran***, 612 F.3d at 692 (finding a legitimate law enforcement goal in increasing the amount of drug transactions to probe the true extent of a criminal enterprise); ***Torres***, 563 F.3d at 735 (finding a legitimate law enforcement goal in engaging in a series of drug purchases to build trust and ultimately determine the volume of drugs he was capable of selling). *See generally **United States v. Matlack***, 674 F. Appx. 869, 872 (11th Cir. 2016) (holding, on similar facts, that the district court did not err "by failing to hold that the government engaged in sentencing factor manipulation by using a fictitious 12-year-old child to catch [the defendant] in a crime with an enhanced sentence," even when "the government was the first to mention a 12-year-old child," because the defendant "initiated the conversation," "was the first to mention wanting 'young stuff,'" and "could have said no to the transaction based on the age of the

child, but [ ] did not"). Thus, Johnson has no cognizable sentencing-manipulation claim.

Johnson's sentencing-manipulation attack also fails because he cannot satisfy his burden of proof. He provides no evidence that the government acted solely to enhance his sentence. Instead, he argues Nielsen could have achieved law enforcement's goal of catching the "worst of the worst" by making Abi age 12 or 11, and that making her age 13 (the end point for the higher statutory and guideline penalty) is evidence enough. It is not. *See United States v. Sacus*, 784 F.3d 1214, 1220–21 (8th Cir. 2015) (finding the district court did not err in its sentencing when the agent gave "legitimate law enforcement reasons," and the defendant "provided no evidence that the[] legitimate law enforcement reasons were solely a ruse for sentence enhancement"); *Moran*, 612 F.3d at 692 (finding no sentencing manipulation when a legitimate law enforcement goal exists, and the record reveals that sentencing enhancement was not the sole purpose behind the officers' actions).

Johnson further argues that the district court's "worst of the worst" analysis is erroneous and clear error. He asserts the district court's denial is based on unfounded speculation because the government did not provide a legitimate law enforcement goal for this inference. *See United States v. Harrell*, 982 F.3d 1137, 1140 (8th Cir. 2020) (stating "sentencing courts may not engage in speculation or draw inferences unsupported by the record"). This court applies a deferential abuse-of-discretion standard when reviewing the imposition of sentences. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). The district court did not abuse its discretion in finding an obvious legitimate law enforcement goal.

The district court properly refused to grant a downward variance based on Johnson's claim of sentencing manipulation.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-10-